UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HIEU TRI NGUYEN,<br><br>    Petitioner,<br><br> v.<br><br>PAMELA BONDI, Attorney General of the United States, et al.,<br><br>    Respondents. | CASE NO. 2:25-cv-02024-TL<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Hieu Tri Nguyen, who has been detained at the Northwest ICE Processing Center ("NWIPC") for over ten months,[1] brings a Petition for Writ of Habeas Corpus ("habeas petition"), asserting that his continued detention violates both the Immigration and Nationality Act ("INA"), 8 U.S.C. §1101, *et seq.*, and the Due Process Clause of the Fifth Amendment to the United States Constitution. Dkt. No. 1. He also seeks relief regarding potential removal to a third country. *Id.* Respondents are Pamela Bondi, U.S. Attorney General; Kristi Noem, Secretary, U.S. Department of Homeland Security ("DHS"); Cammilla Wamsley, Field Officer Director of

---

[1] *See infra* Section III.A.1.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 1

Enforcement and Removal Operations, Seattle Field Office, Immigration Customs Enforcement ("ICE"); and Bruce Scott, Warden of NWIPC (collectively, "Respondents"). Respondents filed a response arguing that Petitioner's continued detention does not violate Due Process and asserting that Petitioner's claims regarding third-country removal are not ripe for consideration. Dkt. No. 13. Having considered Petitioner's petition, Respondents' response, Petitioner's reply (Dkt. No. 16), and the relevant record, the Court GRANTS Petitioner's petition.

## I.  BACKGROUND

### A.  Petitioner's Factual Background

Petitioner was born in Vietnam in 1972 and experienced discrimination in his youth because of his appearance[2] as well as his family's politics. Dkt. No. 1 at 5. Petitioner's father immigrated to the United States as a refugee when Petitioner was very young and subsequently sponsored Petitioner to join him. *Id.* at 5–6. Petitioner was admitted to the United States as a lawful permanent resident in 1989 when he was 17 years old. Dkt. No. 1 at 6; Dkt. No. 13 at 1.

Between 1994 and 1998, Petitioner was convicted of several serious crimes. Dkt. No. 13 at 1. Following a custodial sentence, and due to the criminal convictions he accrued, immigration officials detainer Petitioner on October 2, 2001, and served him with a Notice to Appear, charging him with deportability based on his conviction for an aggravated felony offense. Dkt. No. 13 at 1–2; Dkt. Nos. 15-1 (Notice to Appear), 15-2 (Form I-213). On November 14, 2001, an immigration judge ordered Petitioner removed from the United States to Vietnam. Dkt. No. 13 at 2; Dkt. No. 15-3 (Removal Order). At that time, Petitioner was not removed because Vietnam was not accepting repatriation of its citizens, and immigration officials released Petitioner on an Order of Supervision ("OSUP") on March 25, 2002. Dkt. No. 13 at 2; Dkt. No. 15-4 (OSUP).

---

[2] Despite being born to two Vietnamese parents, Petitioner was mistaken for a "war baby" (or child of an American soldier) due to his light complexion, his hair color and texture, and his father's absence. Dkt. No. 1 at 5 n.1.

One of the conditions of the OSUP was that Petitioner not commit any crimes. Dkt. No. 13 at 2; Dkt. No. 15-4 at 4. Petitioner's time in detention in 2001 totaled 131 days. Dkt. No. 13 at 5.

A little over ten years later, on July 22, 2013, Petitioner pled no contest to attempted murder of a co-worker and related felony charges, receiving a sentence of nineteen years of imprisonment. *Id.* at 2. While serving his sentence, Petitioner engaged in programming, including mental health programming to understand his childhood trauma, vocational training, and educational services. Dkt. No. 1 at 6.

On June 11, 2025, Petitioner was released from the California Department of Corrections and immediately taken into ICE custody pursuant to the prior removal order. *Id.* at 7; Dkt. No. 13 at 2. On June 19, 2025, ICE provided Petitioner with the Vietnam travel documents application to complete, and he completed it on June 23, 2025. Dkt. No. 14 (Strzelczyk Decl.) ¶ 12. ICE sent the documents to be translated and is still waiting for the completed translations. *Id.* ¶ 13. As of the date of the filing of Respondents' response, Petitioner had been detained 149 days since his prison release. Dkt. No. 13 at 4.

Petitioner has lived in the United States since he was 17 years old. His father and all his grandparents have passed, and his immediate surviving family (his mother, siblings, ex-wife, and children) are all citizens of the United States. Dkt. No. 1 at 7. Most of his extended family has left Vietnam. *Id.*

**B.      Repatriation to Vietnam**[3]

For nearly three decades, Vietnam has been unwilling to repatriate most Vietnamese citizens who (like Petitioner) immigrated to the United States before 1995. *Id.* at 8. Prior to 2017, ICE maintained that the removal of pre-1995 Vietnamese immigrants was unlikely given

---

[3] Respondents do not dispute either the history of repatriation by Vietnam or the conditions of repatriation to Vietnam described by Petitioner. Dkt. No 1 at 7–11; *see generally* Dkt. No. 13.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 3

Vietnam's consistent refusal to repatriate them and adopted a policy of detaining pre-1995 Vietnamese immigrants for no longer than ninety days after their removal orders became final. *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1083 (C.D. Cal. 2020). After ninety days, ICE generally released such individuals into the community on orders of supervision. *Id.*

In 2020, ICE and Vietnamese officials reached a Memorandum of Understanding addressing pre-1995 Vietnamese immigrants to the United States and the facilitation of their repatriation if ordered removed ("MOU").[4] Dkt. No. 1-1. Section 4 of the MOU contains three publicly disclosed mandatory criteria for eligibility for repatriation and a fourth redacted criterion:

(1)   Has Vietnamese citizenship and does not have citizenship of any other country at the same time;

(2)   Has violated U.S. law and has been ordered removed by a U.S. competent authority (and, if sentenced to a prison term, the individual must have completed any term of imprisonment before removal or a U.S. competent authority must have ordered a reduction in the sentence or the individual's release from prison);

(3)   Resided in Viet Nam prior to arriving to the United State and currently has no right to reside in any other country or territory;

(4)   [redacted]

*Id.* at 2–3. While Sections 5 and 6 of the MOU are mostly redacted, later portions of the document discuss the provision of information and documentation regarding "family unity." *Id.* at 4–5. An experienced attorney familiar with Vietnam's repatriation process and requirements affirms that the process for the repatriation of pre-1995 immigrants "is highly dependent on the individualized facts of each case, including whether the individual has any family remaining in Vietnam, whether their Vietnamese identity can be verified, their criminal records, and the manner in which they left Vietnam and came to the United States, among other factors." Dkt.

---

[4] A redacted version of the MOU made available through a Freedom of Information Act request was appended to the petition.

No. 1-2 (Tin Thanh Nguyen Decl.) ¶ 8. The MOU indicates that Vietnamese officials intend to issue travel documents "when the individual meets the eligibility criteria listed in Section 4 of this MOU" within 30 days of receipt of a travel document request from DHS. Dkt. No. 1-1 at 5.

C.    **Third-Country Removals**

On May 9, 2025, President Donald Trump announced, "[I]f illegal aliens choose to remain in America, they're remaining illegally, and they will face severe consequences," such as "significant jail time, . . . garnishment of all wages, imprisonment and incarceration, and *sudden deportation in a place and manner solely of our discretion*."[5] Petitioner's brief sets forth the various third countries to which individuals have been sent over the past year, the circumstances surrounding those removals, and the harsh conditions to which removed individuals have been subjected, which include being held incommunicado, solitary confinement, sanitation issues, and extended additional (and possible indefinite) detention. Dkt. No. 1 at 16–24. Petitioner has also provided declarations from two attorneys working with Vietnamese immigrants who have been removed to third countries prior to completing the process for obtaining travel documents from Vietnam and with less than twenty-four hours' notice. Dkt. No. 1-2 ¶¶ 19–20; Dkt. No. 1-4 (Aldana Madrid Decl.) ¶¶ 10–11.

## II.    LEGAL STANDARD

Petitioner is detained under 8 U.S.C. § 1231. Under Section 1231(a)(1), "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1). Section 1231(a)(2) mandates the detention of the noncitizen during the

---

[5] Roll Call, Donald Trump Vlog: Self-Deportation Program - May 9, 2025, at 00:55 https://rollcall.com/factbase/trump/transcript/donald-trump-vlog-self-deportation-program-may-9-2025 (permalink: https://perma.cc/XBX2-QALT) (emphasis added); *see also* The White House, TO ALL ILLEGAL ALIENS: BOOK YOUR FREE FLIGHT RIGHT NOW, at 01:55 (YouTube, May 9, 2025), https://www.youtube.com/watch?v=8Z_ib8266dQ.

removal period. 8 U.S.C. § 1231(a)(2). Finally, Section 1236(a)(6) authorizes the continued detention of noncitizens after the expiration of the removal period:

> [A noncitizen] ordered removed who is inadmissible under section 1182, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the [the Secretary of Homeland Security] to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

While there is no temporal limit on the length of detention in the statute, the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 698 (2001), observed that "Congress enacted the present law, which liberalizes pre-existing law by shortening the removal period from six months to 90 days, mandat[ing] detention of certain criminal [noncitizens] during the removal proceedings and for the subsequent 90-day removal period . . . ." The Supreme Court reasoned that "[w]hile an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months." *Id.* at 701 (citing Juris. Statement in *United States v. Witkovich,* O.T. 1956, No. 295, at 8–9.)

The Supreme Court went on to hold that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal under Section 1231(a)(6), *id.* at 699, instead construing the statute to contain an "implicit 'reasonable time' limitation," *id.* at 682. "[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized six months as that time limitation. *Id.* at 701. It further found that if a statute were to permit indefinite detention of a noncitizen, that would "raise a serious constitutional problem"

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 6

under the Fifth Amendment's Due Process Clause. *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.*

Ultimately, the Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* at 701. However, "[a]fter this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id.*

### III. DISCUSSION

The Court begins with a caution from the Supreme Court in *Zadvydas*: "The proceedings at issue here are civil, not criminal, and we assume that they are nonpunitive in purpose and effect. . . . [W]here detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." *Id.* at 690 (citation modified).

**A.     Continued Detention**

    **1.     The Length of Petitioner's Detention Is Beyond What Is Presumptively Reasonable**

The six-month presumption "does not mean that every [noncitizen] not removed must be released after six months. To the contrary, [a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Nevertheless, "for detention to remain reasonable, as the period of prior

postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

Between his two periods of immigration-related detention in 2001 and 2025, Petitioner had been detained a total of 280 days as of the date of the filing of Respondents' response, or over nine months (over ten months as of the date of this Order). Respondents state that "[w]hile in the aggregate, the 'presumptively reasonable' six-month custody period has expired—Petitioner has been in ICE custody for less than five months since his release from a lengthy prison sentence." Dkt. No. 13 at 4. Under Respondent's approach of requiring the six-month period to be a consecutive period of detention, they could skirt the constitutional requirement of due process by simply releasing an individual at five months and 29 days, re-detaining the individual the next day, releasing the person again at five months and 29 days, re-detaining the next day, and repeating this cycle, resulting *de facto* in an indefinite period of detention. This non-sensical assertion has been rejected by a number of courts in this Circuit. *See, e.g.*, *Giorges v. Kaiser*, No. C25-7683, 2025 WL 2898967, at *8 n.5 (N.D. Cal. Oct. 10, 2025); *Tang v. Bondi*, No. C25-1473, 2025 WL 2637750, at *4 (W.D. Wash. Sept. 11, 2025); *Nguyen v. Scott*, No. 25-1398, 2025 WL 2419288, at *13 (W.D. Wash. Aug. 21, 2025); *Sied v. Nielsen*, No. C17-6785, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (collecting cases). This Court agrees the period of detention not need to be consecutive to trigger the six-month presumption. Therefore, the Court finds that Petitioner has been detained beyond the presumptively reasonable time period.

**2.     Petitioner Provides Good Reason to Believe that There Is No Significant Likelihood of Removal in the Reasonably Foreseeable Future**

Petitioner is a pre-1995 Vietnamese immigrant. Currently, Vietnam will only accept pre-1995 immigrant deportees from the United States if they meet specific criteria, some of which

are generally unknown and about which Respondents have not provided any additional information. *See supra* Section I.B. Respondents made no known effort to seek travel documents for Petitioner or confirm his eligibility for repatriation before detaining him. While Petitioner completed the travel application materials and returned them to ICE within four days of receiving them, ICE has not completed the translation of the materials in the intervening nearly six months. Dkt. No. 14 ¶¶ 12, 13. When Petitioner's family tried to assist by providing documents directly to the Vietnamese Consulate, the consulate indicated it was still missing needed paperwork from the Vietnamese government. Dkt. No. 1 at 27.

The MOU suggests that in considering whether to repatriate an individual, Vietnam considers both the applicant's criminal history and any family ties that remain in Vietnam. Dkt. No. 1-1 at 3–4. Petitioner provides the sworn declaration of Tin Thanh Nguyen, an attorney who has specialized in immigration and deportation cases involving Vietnamese citizens for nearly two decades, who states the process for the repatriation of pre-1995 immigrants is highly dependent on the individualized facts of each case, including whether the individual has any family remaining in Vietnam and the individual's criminal record. Dkt. No. 1-2 ¶ 8. The attorney further declares that it has taken months for pre-1995 Vietnamese immigrants to even receive an answer from Vietnamese officials about whether they are approved for travel documents. *Id.* ¶ 12. Finally, despite having worked with or assisted hundreds of pre-1995 arrival Vietnamese immigrants for whom the United States government requested travel documents from Vietnam, the attorney has had travel documents issued in only a handful of cases. *Id.* ¶ 11. Petitioner has lived in the United States since he was 17 years old and no longer has any close family in Vietnam. Dkt. No. 1 at 27. This, in combination with Petitioner's criminal history and lack of family ties in Vietnam, provides good reason to doubt his eligibility for repatriation to Vietnam based upon what is known to the Court from the MOU.

Accordingly, Petitioner has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."

### 3. Respondents Fail to Rebut Petitioner's Showing that He Is Entitled to Habeas Relief

Respondents first attempt to rebut Petitioner's arguments by asserting that the danger he poses to the community must be considered when determining the reasonableness of his detention. Dkt. No. 13 at 7. The Supreme Court considered this very argument in *Zadvydas*. 533 U.S. at 690–92. The two petitioners in that case were: (1) Kestutis Zadvydas, an individual who had a long criminal record involving attempted robbery, attempted burglary, theft, and drug crimes, including most recently possessing of cocaine with intent to distribute (for which he received a sentence of 16 years' imprisonment), as well as a history of flight from both criminal and deportation proceedings, *id.* at 684; and (2) Kim Ho Ma, an individual who was involved in a gang-related shooting at 17 and convicted of manslaughter. *Id.* at 685. Even with these serious criminal histories, the Supreme Court noted that "[t]he provision authorizing detention does not apply narrowly to a small segment of particularly dangerous individuals . . . ." 533 U.S. at 691 (citation modified). Further, "once the flight risk justification evaporates, the only special circumstance present is the [noncitizen]'s removable status itself, which bears no relation to a detainee's dangerousness." *Id.* at 691–92. Here, while Petitioner's criminal history is very serious, there are no allegations that Petitioner failed to report regularly as required by his OSUP (*see* Dkt. No. 15-4 at 2) when he was previously released pending removal. Ultimately, the Supreme Court acknowledged that while preventive detention based on dangerousness has been upheld, it is upheld "only when limited to specially dangerous individuals *and* subject to strong procedural protections." *Zadvydas*, 533 U.S. at 691 (emphasis added).

While the Court appreciates the concern raised by Respondents, Petitioner has paid his debt to society for his prior crimes through his prison sentences. Further, upon release, Petitioner will still be subject to the OSUP, which has many conditions, including requirements that he periodically appear before an immigration officer; answer questions about his habits, associations, and activities; submit to medical or psychiatric testing as necessary; furnish written notice of any change of address or employment; and assist ICE in obtaining any necessary travel documents. Dkt. No. 15-4 at 2; *see also Zadvydas*, 533 U.S. at 701 ("[O]f course, the [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions."); *Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1115 (9th Cir. 2001) (noting conditions of supervision while on release). As the potential dangerousness of the petitioners in *Zadvydas* was not sufficient to justify civil confinement that is "potentially permanent," 533 U.S. at 691, and Respondents have not shown that this Petitioner's potential dangerousness is any greater, this Court also finds Respondents have failed to meet their burden on rebuttal to overcome Petitioner's showing that he is entitled to habeas relief.

Respondents' second argument is that Petitioner's detention is not indefinite. Dkt. No. 13 at 7. Respondents assert that ICE is taking active and concrete steps to remove Petitioner to Vietnam. *Id.* Even so, Respondents admit that there has been a delay in receiving Petitioner's translated application materials. *Id.* Petitioner provided the requested application four days after he was given the materials, completing them on June 23, 2025. Dkt. No. 14 ¶ 12. Respondents are completely silent not only about the nearly six months that have elapsed since Petitioner's application materials were provided to be translated, but also about any estimated date when they will receive the translations. It is also unclear why ICE could not have attempted to obtain this

information from Petitioner prior to his release from prison to try to mitigate the length of his detention or avoid running into the issue of a presumptively unreasonable detention.

Respondents also assert that "ICE anticipates receiving travel documents expeditiously because the government of Vietnam has agreed to issue travel documents within 30 days." Dkt. No. 13 at 7–8; *see also* Dkt. No. 14 ¶¶ 15–17. But even assuming this is true, Respondents do not in any way address the issue of whether Petitioner actually meets the criteria set forth in the MOU for repatriation. While Petitioner specifically points out this issue (*see* Dkt. No. 1 at 11), Respondents have not provided the Court (*ex parte* or *in camera*) with information that Petitioner meets the fourth redacted criterion in the MOU. Petitioner also points out possible eligibility problems because he has no family ties in Vietnam and a serious criminal record, both of which seem to be factors weighing against eligibility for repatriation. *Id.* at 10. But again, Respondents are utterly silent on this potential reason for Vietnam to deny Petitioner repatriation. Finally, while Respondents have provided evidence that ICE has effected the removal to Vietnam of Vietnamese nationals including individuals who entered the United States prior to 1995 (Dkt. No. 14 ¶¶ 14, 16), the evidence is extremely vague in that it neither states how many such individuals were repatriated nor whether any of those individuals had serious felony convictions and no remaining family ties to Vietnam. Without this important and pertinent information, the Court simply cannot determine that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future. *See Nguyen v. Hyde*, 788 F. Supp. 3d 144, 151 (D. Mass. 2025) (court could not determine there was a significant likelihood of removal to Vietnam in the reasonably foreseeable future without information such as total number of requests versus actual number of travel documents issued by Vietnam or the number of pre-1995 Vietnamese individuals who were removed); *Hoac v. Becerra*, No. C25-1740, 2025 WL 1993771, at *5 (E.D. Cal. July 16, 2025) (same).

Accordingly, the Court finds that Respondents fail to meet their burden to rebut Petitioner's showing that he is entitled to habeas relief and, therefore, Petitioner should be immediately released from custody.

**B.      Third-Country Removal**

Respondents to do not contest any of the facts or arguments asserted by Petitioner regarding third-country removal. *See generally* Dkt. No. 13. Rather, Respondents only argue that Petitioner's claim regarding third-country removal is not yet ripe for consideration. *Id.* at 8–10.

**1.      Ripeness**

One "must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy" to invoke the jurisdiction of the federal courts. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). "Ripeness is one of the justiciability doctrines that we use to determine whether a case presents a live case or controversy. For a case to be ripe, it must present issues that are definite and concrete, not hypothetical or abstract. Ripeness coincides squarely with standing's injury in fact prong." *50 Exch. Terrace LLC v. Mount Vernon Specialty Ins. Co.*, 129 F.4th 1186, 1188 (9th Cir. 2025) (citation modified).

To satisfy the injury-in-fact prong of standing (and therefore to demonstrate ripeness) in "assert[ing] a claim for prospective injunctive relief, a plaintiff must demonstrate 'that he is realistically threatened by a repetition of the violation.'" *Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012) (citation modified) (quoting *Lyons*, 461 U.S. at 109). To make the required showing, a plaintiff : (1) "may show that the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy," *id.* (quoting *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2011), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005)); or (2) "may demonstrate that the harm is part of a 'pattern of officially sanctioned behavior, violative of . . . federal rights.'" *Id.* (citation modified) (quoting *Armstrong*, 275 F.3d at

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 13

861). "While this test is framed in terms of a past harm already experienced, a plaintiff is not strictly required to have *already suffered* a harm in order to seek prospective injunctive relief." *Esmail v. Noem*, No. 25-8325, 2025 WL 3030589, at *5 n.7 (C.D. Cal. Sept. 26, 2025). "Rather, 'the plaintiff must demonstrate that he has suffered *or* is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way.'" *Id.* (citation modified) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)). Where "the harm alleged is directly traceable to a written policy . . . there is an implicit likelihood of its repetition in the immediate future." *Bates*, 511 F.3d at 986 (omission in original) (quoting *Armstrong*, 275 F.3d at 861). Finally, "the claimed threat of injury must be likely to be redressed by the prospective injunctive relief." *Id.*

Respondents argue that the record contains no evidence supporting Petitioner's argument that he could be removed to a third country. Dkt. No. 13 at 9. In support of its response, Respondents submit the declaration of Daniel R. Strzelczyk, a Deportation Officer with DHS. Dkt. No. 14. Officer Strzelczyk asserts that "*[a]t this time*, ICE is only seeking to remove Petitioner to Vietnam. ICE is not seeking to remove Petitioner to any other country." *Id.* ¶ 18 (emphasis added). The Ninth Circuit has found that a defendant's reassurances were insufficient to mitigate immediate threatened injury faced by plaintiffs where, *inter alia*, the proposed stipulation was limited in nature, the defendant could terminate the stipulation with notice, and the defendant's history of behavior suggested a likelihood of harm. *See Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016). Here, that Officer Strzelczyk chose to qualify his statement with the phrase "at this time" is significant: it clearly indicates that the decision could be changed at any moment. And should Respondents change their position, "irreparable harm could easily occur before Petitioner's counsel could seek relief or obtain a ruling from the Court." *Nguyen v. Scott*, 2025 WL 2419288, at *28. Further, considering this

qualified assurance in light of current ICE policy, *see infra* Section III.B.2, President Trump's support of and commitment to "*sudden deportation in a place and manner solely of our discretion*," and the undisputed actions of Respondents in carrying out such sudden and discretionary removals (*see* Dkt. No. 1 at 16–24), the Court finds the voluntary promise insufficient. *See Boardman*, 822 F.3d at 1023. Moreover, "[t]he fact that this injury is 'directly traceable to a written policy' suggests that 'there is an implicit likelihood of its repetition in the immediate future.'" *Esmail*, 2025 WL 3030589, at *5 (quoting *Bates*, 511 F.3d at 986).

Therefore, the Court is satisfied that Petitioner has sufficiently demonstrated "that he is realistically threatened by a repetition of the violation" at issue, *Melendres*, 695 F.3d at 997 (quoting *Lyons*, 461 U.S. at 109), Petitioner therefore has standing to seek relief regarding third-country removal, and this issue is ripe for decision.

### 2. Injunctive Relief Regarding Third-Country Removal in Appropriate

Because Petitioner's request for injunctive relief is made within his habeas petition, whose resolution is necessarily dispositive of this action, the Court construes it as a request for a permanent injunction. "The requirements for a permanent injunction mirror those of a preliminary injunction." *Ali v. Ashcroft*, 213 F.R.D. 390, 405 (W.D. Wash.), *aff'd*, 346 F.3d 873 (9th Cir. 2003), *opinion withdrawn on denial of rehearing on other grounds sub nom Ali v. Gonzales*, 421 F.3d 795 (9th Cir. 2005), *as amended* (Oct. 20, 2005). A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Because Respondents have not addressed Petitioner's substantive arguments in favor of protection against third-country removal (*see generally* Dkt. No. 13), the Court has only

Petitioner's arguments before it. However, Petitioner has provided the Court with sufficient inarguable evidence to rule without argument from Respondents. *See Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1990) (noting that, while "[t]he failure to respond to claims raised in a petition for habeas corpus does not entitle the petitioner to a default judgment" on those issues, unanswered claims may be resolved "without need of any response from the respondent[s]").

Petitioner clearly lays out the legal framework governing the countries to which a noncitizen may be removed, and under what circumstances. Dkt. No. 1 at 12–13. *Only* if it is "impracticable, inadvisable, or impossible" to remove a noncitizen to (a) the country the noncitizen has designated for removal; (b) the country of which the noncitizen is a subject, national, or citizen; (c) the country from which the individual was admitted to the United States, or which contains the port from which they disembarked for the United States or a contiguous territory; or (d) the non-citizen's country of birth (or the country that now contains their birthplace) or immediate previous residence may the government remove the noncitizen to "another country whose government will accept [them] into that country." *Id.* (citing U.S.C. § 1231(b)(2)(E)). Even then, the government may not remove any person to a country where they will be persecuted or tortured. *Id.* at 13 (citing 8 U.S.C. § 1231(b)(3)(A); Foreign Affairs Reform and Restructuring Act of 1998 (''FARRA''), Public Law 105–277, div. G, sec. 2242, 112 Stat. 2681, 2631–822 (8 U.S.C. § 1231 note); 28 C.F.R. §§ 200.1, 208.16–208.18, 1208.16–1208.18. Where third-country removal is anticipated, due process requires, *inter alia*, "written notice of the country being designated" and "the statutory basis for the designation, i.e., the applicable subsection of § 1231(b)(2)," *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); that the noncitizen be asked whether they fear persecution or harm upon removal to the third country, and their response memorialized in writing, *id.*; and that notice of the notice of the country to which the noncitizen will be removed not be provided "last minute" but with

sufficient time that the noncitizen have a meaningful opportunity to apply for fear-based protection from removal, *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

In the context of this governing law, Petitioner offers two grounds for the relief he seeks. First, he alleges that his potential third-country removal pursuant to current ICE policy would violate, *inter alia*, the Fifth Amendment, the INA, and the Convention Against Torture by depriving him of "meaningful notice and opportunity to respond to any attempt to remove Petitioner to a third country in reopened removal proceedings." Dkt. No. 1 at 27. The unrebutted evidence Petitioner provides, in the form of ICE's own policy, is convincing. In clear contradiction with the controlling law explained above, this policy provides that "[i]f the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the [noncitizen] may be removed *without the need for further procedures*." Dkt. No. 1 at 23 (quoting Dkt. No. 1-5 (July 9, 2025, Memorandum to ICE Employees)) (alterations in original) (emphasis added); *see also Nguyen*, 2025 WL 2419288, at *19. In those cases where ICE has *not* received diplomatic assurances it deems credible, an officer will serve the noncitizen with a notice of removal, including the intended country of removal. *Id.* However, the policy notes that ICE will "will not affirmatively ask whether the [noncitizen] is afraid of being removed to the country of removal." *Id.* (alteration in original) (emphasis in original memo). ICE will "generally wait at least 24 hours following service of the Notice of Removal before effectuating removal," but in "exigent circumstances," ICE need wait only six hours. *Id.* If the noncitizen "does not affirmatively state a fear of persecution or torture if removed to the country on the notice within 24 hours," they will be removed to the third country. *Id.*

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 17

1    "This policy alone could make Petitioner's removal to a third country an imminent threat
2    given the low likelihood of his removal to Vietnam." *Nguyen v. Scott*, 2025 WL 2419288, at *26.
3    Here, however, like the petitioner in *Nguyen v. Scott*, Petitioner has also provided evidence that
4    the government has removed or attempted to remove Vietnamese nationals to third countries
5    including South Sudan, Libya, and Eswatini. Dkt. No. 1 at 20–21; *see also Nguyen v. Scott*, 2025
6    WL 2419288, at *26. Respondents fail to dispute in any way Petitioner's arguments that
7    Respondents' current policy of third-country removals violates the Fifth Amendment, the
8    Immigration and Nationality Act, and the Convention Against Torture. *Compare id.* at 27–28
9    *with* Dkt. No 13. The unanswered facts presented by Petitioner—in the form of ICE's own policy
10   and past actions—demonstrate that removal to a third country is an immediate threat and do not
11   inspire confidence that Respondents can be relied upon to comport with the requirements of due
12   process absent an order from this Court.
13   As his second ground for relief from third-country removal, Petitioner alleges that the
14   government could attempt to remove him to a third country—specifically a third country where
15   he likely "will be imprisoned and harmed," "possibly indefinitely and . . . in abhorrent
16   conditions," as additional punishment for his criminal convictions. Dkt. No. 1 at 28–29. This
17   argument is raised under the Eighth Amendment, which prevents cruel and unusual punishment,
18   and the Fifth Amendment, which prohibits extrajudicial punishment. Petitioner also cites the
19   long-established rule, dating to *Wong Wing v. United States*, 163 U.S. 228, 237–38 (1896), that
20   no "infamous punishment" in addition to deportation may be imposed for immigration violations
21   without a proper criminal trial.
22   Respondent alleges that the government has violated these protections by "select[ing
23   countries notorious for human rights abuses and instability for third country removal
24   arrangements[,] . . . target[ing] individuals with criminal convictions for third country removals

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 18

where they will be imprisoned and harmed[,] and publicly broadcast[ing] those removals to demonize and dehumanize the individuals subjected to these practices and strike fear in the immigrant community to send a message of retribution and deterrence." Dkt. No. 1 at 29.

Again, Respondents make no answer. But courts in this district and across the country have recognized that Petitioner is correct: the government is intentionally removing individuals to countries where they will be imprisoned. *Nguyen v. Scott*, 2025 WL 2419288, at *24 (collecting cases). Here, Petitioner has provided the Court with an official video issued by President Donald Trump warning that "if illegal aliens choose to remain in America, they're remaining illegally, and they will face severe consequences . . . punishments including significant jail time, enormous financial penalties, confiscation of all property, garnishment of all wages, imprisonment and incarceration, and sudden deportation in a place and manner solely of our discretion."[6] These statements explicitly announce a punitive purpose to Respondent's immigration policies including third-country removal—a clear Fifth Amendment violation.

For all these reasons, Petitioner has shown that Respondents' practice of third-country removal paired with imprisonment violates due process. Moreover, the *Winter* factors are easily met. First, Petitioner has already succeeded on the merits of his habeus claim and demonstrated that the action he asks to have enjoined is a violation of at least the INA. Second, it is beyond dispute that Petitioner would face irreparable harm from removal to a third country. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (detainees with pending habeas petitions facing removal under Alien Enemies Act faced "an imminent threat of severe, irreparable harm"). Were Petitioner to be "removed from the United States to the custody of a foreign sovereign . . . the Government [might] argue[], as it has previously argued, that no U. S. court ha[s] jurisdiction to order relief.

---

[6] *Infra* n.5. The Court takes judicial notice of this video and these statements by President Trump, whose authenticity is "not subject to reasonable dispute" (and is not disputed) because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"—here, the video blog posted on the internet by the Trump administration. Fed. R. Evid. 201.

*Id.* at 93. That is, the legal remedies by which Petitioner might redress this harm would be substantially diminished, if not extinguished entirely. Third, in light of such serious harm to Petitioner, and no demonstrated harm to the government by requiring it to follow the law, the balance of equities tips steeply in Petitioner's favor. Fourth and finally, the public interest is also served by the injunction Petitioner seeks, which requires the government only to provide him with the process already due under the law. Under these circumstances, injunctive relief is appropriate.

Because Petitioner has standing to raise the third-country removal issue at this time and has demonstrated that relief is warranted, the Court grants the relief requested.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's petition for writ of habeas corpus (Dkt. No. 1). The Court further ORDERS that Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(1) RELEASE Petitioner from detention immediately pursuant to the conditions in his preexisting Order of Supervision. Nothing in this Order prevents Respondents from requesting the Government of Vietnam accept Petitioner's return.

(2) Are PROHIBITED from removing Petitioner to a country other than Vietnam without notice and a meaningful opportunity to be heard in reopened removal proceedings with a hearing before an immigration judge;

(3) Are PROHIBITED from removing Petitioner to any country where he is likely to be imprisoned upon arrival or to face persecution or torture.

Dated this 10th day of December, 2025.

Tana Lin
United States District Judge